## MEYER *v.* LITTELL.

1. The proper course, on failure to file a warrant of attorney, is to stay proceedings, not quash the writ.
2. Where a general authority was given by the owner and chief of a trading "institution," to a factor residing abroad, as chief of a branch house, on all matters connected with the house, he is authorized to institute a suit in the individual name of one of his principals, without evidence that the property belonged to the "institution."

ERROR to the District Court of the city and county of Philadelphia.

*Jan.* 26.—An action of replevin was instituted in the name of Joseph Meyer, and the goods, consisting of books, &c., were delivered. A rule was taken April 7, 1840, on plaintiff's attorney to file his warrant. A warrant was filed, signed by "Joseph Meyer, by his attorney in fact, C. H. Hauseman." After a rule to quash the writ was taken, an instrument on which the question in the cause arises was filed, but the

court, conceiving it did authorize Hauseman to give the warrant, made the rule absolute.

The instrument was executed by Minna Meyer, late Grobe, as owner of the Bibliographic Institution, J. Meyer, (the plaintiff,) chief of the said institution, and said C. H. Hauseman. From this it appeared that Mrs. Meyer, the owner of said institution, with consent of Mr. J. Meyer, had determined to establish a branch house for the sale of books, &c. in America. Mr. Hauseman was appointed the agent there, and gave security for his faithful conduct. His powers and responsibilities as agent of the house were great; nor was there any question made in the cause as to his right to represent the institution in every thing. He was to sign, "Pp. N. A. Bibliographic Institution, C. H. Hauseman.—Particular instances of powers, &c., are referred to in the opinion of the court, showing the extent of his rights and duties.

*Keemlé*, with whom was *Ingraham*, argued that, admitting the power was insufficient, the only remedy was to stay proceedings, under the act of 1834, Purdon's Dig. 92. He then argued, the only point the court ought to inquire into was, whether the suit was vexatious. Here it was evident Mr. Meyer was *interested* in the property of the institution, his wife being the owner; and the court could not inquire, in this summary manner, whether the suit was in the name of the owner. Indeed, absolute ownership was not essential, but the right of possession was the very point to be established in the suit. It abundantly appeared Mr. Hauseman was qualified and bound to take all measures to protect the rights of his principals.

*Markland* and *Meredith*, contrà.—If the property belonged to the institution, the suit must be in that name, for its title imports a corporation. Norris *v.* Stappes, 1 Hob. 211; 2 Lord Ray. 1535; 2 Stra. 807. If it did not, he had no authority to institute a suit in the name of Meyer. That he does not proceed for the institution, appears from his not signing as authorized. The long delay, and no better authority produced, shows Mr. Meyer has not sanctioned this proceeding. The court has this supervisory jurisdiction over its officers and process, King *v.* Oliver, 2 W. C. C. R. 429; and this is the remedy, 1 Tidd's Prac. 160, 161, 167, 488, 494. Besides it appears the wife is owner, and there is no authority from her. This court recognises the separate rights of married women, according to the lex loci. Dougherty *v.* Snider, 15 Serg. & Rawle, 84. The act is but directory, and in this suit the stay of proceedings is exactly what he desires, having got possession of the goods.

*Feb.* 6. Rogers, J.—Whether the action be properly brought in the name of Joseph Meyer, the president of the Bibliographic Institution at Hildburghausen, or should have been instituted in the name of Mrs. Minna Meyers, wife of Joseph Meyer, late Grobe, or both, or as the Bibliographical Institution at Hildburghausen, its corporate name, it would be premature now to decide. The question does not arise on a motion to quash the writ, for a defect of this kind can only be taken advantage of by plea. There is one thing about which we cannot be mistaken, that it was the intention of the pleader, in the action brought, to remedy a wrong alleged to be done by the defendant, in withholding property belonging to the institution, of which the plaintiff was the president and husband of her who is acknowledged to be the sole owner. As appears from the contract, exhibited as part of the case, the mother institution in Germany established a branch, under the name or firm of the North American Bibliographic Institution at Philadelphia, for the sale of works and articles on commission, consisting of fancy, scientific, and standard works in literature in general. Of the branch here, C. H. Hauseman, who gave Mr. Ingraham the warrant to commence and prosecute the action, was the agent, chargé d'affaires, or factor, and as such took charge of the establishment.

In his character of factor, Hauseman was at liberty to commence suit for the recovery of any debts, dues, or profits, belonging to the institution, either in his own name or the name of the principal. If he adopted the former mode, it will hardly be denied he could appoint an attorney-at-law to conduct the suit. If the latter, to my mind it is equally clear he could give a warrant to an attorney for the same purpose, without resorting to his principal for special authority. The power necessarily results from the relation of the parties to the contract; for the delay, when the latter resides in a foreign country, which must ensue, would, in many cases, be destructive of the interest of both principal and factor. Prompt action alone will often save a debt or property from destruction. No authority has been cited contravening these positions, and it is believed none can be produced, and there is nothing in a contrary direction which commends itself in such a way as to induce us to establish it as a precedent to govern future cases. It is said a factor has no right to involve his principal in costs without his consent. To this the answer is obvious, that in the mean time the debt, when the principal is at a distance, may be lost. Besides, the cost of the suit is matter properly resting between the factor and principal, and if the confidence of the latter is abused in this or any other way, the former is liable in damages, so that ultimately the costs will fall on the factor or delinquent party. In article 10, Hauseman guaranties the

mother institution, or its owner, for all the losses occasioned by his faults in general, as, for instance, by neglect, mismanagement, want of vigilence, faithlessness, &c. From this arises an implication of every authority requisite to guard his own and the rights of his principals. An authority to appoint an attorney is indispensable, and were he to lose property by neglecting to exercise that right, it would be a flimsy pretext against an action, charging him with want of diligence at the suit of the principal. In article 11, he guaranties the mother house for one half of all the debts which may be outstanding during his administration of the branch, (Philadelphia house ;) he is also bound for the other half, in case he has effected sales to insolvents or such as are unable to pay, contrary to contract, or agreement, &c. Every outstanding debt which he is unable to collect within two years from the time of its being due, is considered as lost. In article 25, it is agreed that he shall stand responsible for those persons *whom he has to select, to observe, to direct, to discharge*, for any losses which may be occasioned by their neglect. But it is useless to multiply extracts, for every clause and paragraph of the contract teems with proofs of the interest and authority of the factor, and the absolute control of the agent over the business of the institution in this country. He has the right, it is his duty to select, to observe, to direct, and to discharge the agents which he may employ. It is difficult to conceive more ample authority than is conferred by the 25th article above quoted. An attorney-at-law is but an agent employed for a special, necessary, and indispensable purpose.

But conceding, for the sake of the argument, that Hauseman had no power to authorize Mr. Ingraham to commence the suit, was the court right in quashing the writ? The act of the 14th April, 1834, after providing for the admission of attorneys, compelling them to file their warrants, if required, enacts, that if any attorney shall neglect or refuse to file his warrant of attorney, in the manner required by law, he shall not be allowed a fee in the bill of costs, nor be suffered to speak in the cause until he shall have filed his warrant.

By a free construction of this act, the only power which the court has, is to stay the proceedings. In addition to being deprived of his costs, the attorney can do no act in the cause until he files his warrant, in pursuance of a rule taken on him for that purpose. This, in effect, stays the proceedings. The warrant of attorney is intended, at least, as much for the protection of the principal as the adverse party; and when required by the latter, the object generally is any thing but the advancement of the principles of justice in the particular case. In this country, as well as in England, the practice of not filing, but even of taking, these warrants of attorney, is, for the most part, at this day,

disused; a mere parol retainer is deemed sufficient. Hence the court should be indulgent when such objections are taken. It is a summary method of trying, or rather not trying, causes, which ought not to be encouraged. It is, however, not intended to deny that the defendant has the right to know the authority by which he is sued; but it may be well doubted, whether it is required, to the ends of justice, that the court should have power to rule the plaintiff out of court, and thereby destroy the right of action for ever, as would be the case when the act of limitation intervenes. But, however this may be, the act gives no such right, nor do we think the courts ought to assume it. It seems to be conceded, that, in ordinary cases, as, for example, suits for the recovery of money, justice may be obtained by staying the proceedings; but it is said that the action of replevin, when the goods are delivered to the plaintiff, is an exception. But, be it remarked, no such exception is noted in the act, and we see no reason for extending the penalty beyond the express requirements of the statute. In replevin both parties are actors, and of course there is no difficulty in trying the title, which if found in the defendant, the goods will be returned by a writ of retorno habendo, or damages given to the amount of the value. It must be observed, that, in this case, the plaintiff is not the only person interested; but that the sureties in the replevin bond also, answerable as they are to the defendant, if the order of the court, quashing the writ, is allowed to stand. Many cases have been cited where courts have quashed writs. The general power is not doubted, but we have yet to see the case where the power has been exercised because the attorney has neglected or refused to file his warrant. It is ruled in the case of the King of Spain *v.* Oliver, 2 Wash. C. C. R. 429, that it is a power which belongs essentially to all courts, to superintend the conduct of its officers, to see by what authority they act, and that its process shall not be vexatiously employed ; and if the defendant insist upon it, the plaintiff's attorney must file his warrant. These positions are not denied, but the inquiry is, what is the penalty attached to a non-compliance with the act? Beyond this we are prohibited by the act of 21st March, 1806, from going. In the case in hand, there is not the shadow of a pretext for supposing that the process of the court has been abused. The suit was instituted, as there is no room for doubt, to try a bonâ fide assertion of right, but whether brought in the right name we cannot now decide. The rule of law is, that whenever the court is satisfied that the attorney has authority to institute the suit, whether by the production of the warrant of attorney, or by any other manner—even parol evidence that he has authority— they cannot, in a summary way, as by quashing the writ, arrest the

Q

proceedings. As the writ of error has been taken within proper time, there is nothing in the argument derived from the time which has been suffered to elapse since the writ was quashed.

The order of the court, quashing the writ, is reversed, record remitted to the District Court, and procedendo awarded.